IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BERNARD VICTOR MISZLER,          :
                                 :
          Plaintiff              :
                                 :
     v.                          :   3:04-CV-1756
                                 :   JUDGE VANASKIE
JEFFREY SHOEMAKER, ET AL.        :
                                 :
          Defendants             :

MEMORANDUM

Plaintiff Bernard Victor Miszler has moved for a new trial in this civil rights action

following this Court's grant of a motion for judgment as a matter of law on the ground that

the evidence was insufficient to support a finding that the alleged deliberate failure of the

warden of the Susquehanna County Correctional Facility ("SCCF") to assure that Plaintiff

received a prescribed antibiotic medicine for a 48-hour period was the cause in fact of an

infection first observed two weeks after Plaintiff's discharge from the prison.  Having

carefully considered Plaintiff's contentions and the arguments advanced by defense

counsel, the motion for a new trial will be denied.

I. BACKGROUND

This is a civil rights action brought solely under 42 U.S.C. § 1983 for alleged

deliberate indifference to Plaintiff's serious medical needs during a 48-hour period while he

was incarcerated at the SCCF.  Mr. Miszler named as Defendants Jeffrey J. Shoemaker,

the Chief Probation Officer for Susquehanna County; Sheri Chapel, a Probation Officer for

Susquehanna County; Charles J. Aliano, Lance Benedict, Robert Calvin Dean, Gary

Marcho, and Lee Smith, members of the Susquehanna County Prison Board; Susquehanna

County; and William Brennan, Warden of SCCF.  By Memorandum and Order filed on June

4, 2007, all Defendants, with the exception of Warden Brennan, were granted summary

judgment.  In November of 2007, the case proceeded to trial as to Warden Brennan only.

The evidence revealed that on August 20, 2002, while participating in a work release

program offered by Susquehanna County, Mr. Miszler sustained a serious crush injury of

his right femur.  An open reduction of the resulting fracture was performed by Dr. Chiavacci

at the Community Medical Center in Scranton, Pa.  Dr. Chiavacci also repaired a torn right

quadriceps muscle.

Dr. Chiavacci ordered antibiotic treatment while Mr. Miszler remained in the hospital.

For reasons that are not apparent from the record, however, the antibiotics were suspended

for a 36-hour period during Mr. Miszler's hospitalization.

Mr. Miszler was discharged from the hospital on August 27, 2002.  Over his

objections, he was returned to the SCCF that morning.  At the time of his discharge, Mr.

Miszler was given prescriptions by Dr. Chiavacci for three medications: Percocet, Lovenox,

and Keflex, which is a brand name for Cephalexin, an antibiotic.  Specifically, Dr. Chiavacci

prescribed 500 mg capsules of Cephalexin, to be taken four times a day.  When Mr. Miszler

2

arrived at SCCF, his wife provided Warden Brennan with Dr. Chiavacci's prescriptions.

Mr. Miszler was confined at SCCF from August 27 to August 29, 2002.  He claims that he did not receive any Keflex during the approximate 48 hours that he remained at SCCF.  On August 29, 2002, Mr. Miszler was granted a medical furlough by the Court of Common Pleas for Susquehanna County, and was released from SCCF. On the way home, the Keflex prescription was filled.[1]

On September 3, 2002, Mr. Miszler was examined by Dr. Chiavacci, who reported that Mr. Miszler was "doing well," and that the "wound looked good."  No notation of possible infection was made at that time.  Staples used to close the incision were removed during the September 3rd visit.   (Metzger Trial Testimony, Dkt. Entry 52, at 12.)[2]

Mr. Miszler was next seen by Dr. Chiavacci on September 13, 2002, two weeks after his release from jail and more than one week after the prescribed period for the course of antibiotic medication had expired.  At that time, a small necrotic area was observed at the incision site.  Dr. Paul Metzger, an orthopedic surgeon who served as Plaintiff's expert witness, testified that this small necrotic area, coupled with observed warmth and erythema,

---

[1]The prescription written by Dr. Chiavacci upon Mr. Miszler's discharge from the hospital called for a seven-day course of antibiotics.  Assuming that Plaintiff took the full course of antibiotics as prescribed, he would have last taken Keflex on or about September 5, 2002.

[2] For the convenience of the reader of this document in electronic format, hyperlinks to the record have been inserted.  Page references are to the pagination created by the Court's Case Management/Electronic Case Filing system.

were "the first signs of possible wound infection." (Id.)  Dr. Chiavacci prescribed another round of antibiotics.

At another medical examination that occurred on September 16, 2002, drainage from the surgical incision was noted.  Dr. Metzger explained that at that point Dr. Chiavacci relinquished the care of Plaintiff to a plastic surgeon.  (Id.)

On October 7, 2002, Mr. Miszler was readmitted to the hospital, where he underwent debridement of the right thigh wound.  On November 18, 2002, a skin graft was placed over the infected area, and the wound healed.

Mr. Miszler claims that he sustained a loss of quadriceps strength and disfigurement of the right thigh area as a result of the infection first observed on September 13, 2002.  He claims that deliberate indifference of Warden Brennan to his medical condition during his two-day stay at SCCF in late August, 2002, resulted in the infection and necessitated the debridement and skin graft procedures.[3]

At the trial, the recorded testimony of Dr. Metzger was presented.  Dr. Metzger testified that "the wound started to turn sour somewhere around the thirteenth of September, which is a little bit unusual for a wound to start to turn sour like that."  (Metzger Tr., Dkt. Entry 52, at 12.)  Dr. Metzger also observed, however, that crush injuries "behave

---

[3] Mr. Miszler has presented only a civil rights claim in this matter.  No cause of action for negligence was asserted.

in a different fashion." He also testified that, in his experience, crush type injuries are more

prone to infection. (Id. at 14.) Asked to opine "to a reasonable degree of medical certainty,"

as to whether withholding antibiotics from Mr. Miszler for a two-day period in late August of

2002 "caused or contributed to the infection in any way," (Id. at 15), Dr. Metzger testified:

> I can't sit here and tell you a hundred percent, but I can tell you that, once
> again, if I prescribed an antibiotic, I expect that it's going to be taken. I think
> most physicians prescribe antibiotics -- at least orthopedic surgeons – for a
> reason. And if they're not taken, then the answer to that question is I think
> that that certainly raises the possibility and increases the likelihood of an
> infection developing.

(Id.) Dr. Metzger further testified that, in his opinion, the failure to provide antibiotic

medication for a period of time increased the risk of infection. (Id. at 16.)

On cross examination, Dr. Metzger also testified that it was possible that the failure

to provide Mr. Miszler with antibiotics for a 36-hour period while he was a patient in the

hospital could have caused the infection. (Id. at 22-23.) Also on cross examination, Dr.

Metzger testified:

> I'm not saying that if he had gotten those antibiotics [the infection] definitely
> would not have occurred. I don't think I even begin to say that. . . . So I can
> just sort of stick by what I wrote here and say its reasonable to assume that
> the appropriate administration of antibiotics would have minimized the
> likelihood of a deep wound infection.

(Id. at 29.)

Following the submission of Dr. Metzger's testimony, Defendant Brennan moved for

judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure.

Concluding that Mr. Miszler had failed to present competent evidence sufficient to support a finding of fact that the absence of antibiotic medication for a 48-hour period was the cause, in fact, of an infection first detected more than two weeks after his release from SCCF, I granted Warden Brennan's motion.  Mr. Miszler timely moved for a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure.  The post-trial motion has been fully briefed and is ripe for decision.

II.  <u>DISCUSSION</u>

Plaintiff argues that Doctor Metzger's testimony was sufficient to submit to the jury the question of whether Warden Brennan's alleged deliberate indifference was the cause of the infection suffered by Mr. Miszler and the resulting surgical interventions.  In presenting this argument, Plaintiff relies upon the relaxed causation standard expressed in section 323 of the Restatement (Second) of Torts, which, in pertinent part, provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care increases the risk of such harm. . . .

Plaintiff points out that the courts in Pennsylvania have applied section 323 of the Restatement (Second) of Torts in circumstances similar to those presented here, citing <u>Mitzelfelt v. Kamrin</u>, 584 A.2d 888 (Pa. 1990), and <u>Hamil v. Bashline</u>, 392 A.2d 1280 (Pa.

6

1978).  Specifically, Plaintiff relies upon the following statement from <u>Hamil</u>, as quoted in

<u>Mitzelfelt</u>:

> Once a plaintiff has introduced evidence that a defendant's negligent act or
> omission increased the risk of harm to a person in the Plaintiff's position, and
> that the harm was in fact sustained, it becomes a question for the jury as to
> whether or not that increased risk was a substantial factor in producing the
> harm.

<u>Mitzelfelt</u>, 584 A.2d at 892 (quoting <u>Hamil</u>, 392 A.2d at 1286).  Plaintiff argues that Dr.

Metzger's opinion testimony that the fact that antibiotic medication was not received by

Plaintiff "for a period of time . . . place[d] Mr. Miszler at . . . increased risk of infection,"

(Metzger Tr., Dkt. Entry 52, at 16), was sufficient to require that the jury decide causation.

Plaintiff's argument ignores the fact that <u>Bashline</u> and its progeny impose a <u>two-part</u>

test in circumstances where there is "a possibility that the harm would have occurred, even

in the absence of negligence." <u>Mitzelfelt</u>, 584 A.2d at 892.  "The first step is to determine

whether the expert witness for the [Plaintiff] could testify to a reasonable degree of medical

certainty that the acts or omissions complained of could cause the type of harm that the

[Plaintiff] suffered." <u>Id.</u> at 894.  "The second step is to determine whether the acts

complained of caused the actual harm suffered. . . ." <u>Id.</u>  It is only where the plaintiff's

expert can opine to a reasonable degree of medical certainty that the harm sustained could

result from the alleged acts or omissions that the plaintiff may rely upon the relaxed

standard of causation for the second part of the test – that the alleged acts or omissions

increased the risk of sustaining that harm.  Id.

Thus, in Mitzelfelt, the court first examined the testimony of the plaintiff's expert on the question of whether the acts complained of could cause the type of injury sustained in that case (paraparesis).  The court found that the plaintiff's expert's testimony that a sharp drop in blood pressure to the spinal cord could cause paraparesis "rose to the level required by the first prong of the analysis."  Id.

In this case, Dr. Metzger did not testify to a reasonable degree of medical certainty that the absence of antibiotic medication for a two-day period could cause a wound infection first discovered two weeks later, ten days after the surgical staples had been removed, and more than one week after the expiration of the course of prescribed antibiotic treatment.  Dr. Metzger professed no expertise in infectious disease processes.  He offered no explanation for the fact that there was normal surgical incision healing as reported on September 3, 2002, and evidence of an infectious process ten days later.

The question of whether the failure to provide prescribed antibiotics for a two-day period could cause an infection that first manifested itself two weeks later, and more than one week after the prescription expired, needed to be answered by a competent expert witness.  In Long v. Methodist Hosp. of Indiana, Inc., 699 N.E.2d 1164 (Ind. App. Ct. 1998), the court affirmed the entry of summary judgment against the plaintiff in a case where the plaintiff claimed that the failure to comply with a physician's post-surgery orders to

administer antibiotics caused a fatal infection.  Notably, in finding an absence of any genuine issue of fact on causation, the court referred to the opinion of a board-certified physician in internal medicine and infectious diseases that the failure to comply with the surgeon's prescription order was not the cause of the resulting infection.  Id. at 1167.  The defense expert's opinion relied upon reported authorities that found that "'postoperative doses of prophylactic drugs are generally unnecessary [and] a failure to administer postoperative prophylactic antibiotics in a timely manner would not materially affect the risk of postoperative infection.'"  Id.

It is thus evident that whether an absence of antibiotics for a short period of time could be the cause of an infection that first manifests itself several weeks later is the proper subject of expert testimony.  It is also evident that Plaintiff offered no such testimony in this case.  Absent a proper foundation from a competent expert that the failure to receive antibiotics in jail could, to a reasonable degree of medical certainty, cause the infection that was not observed until two weeks after the alleged wrongful conduct, testimony that Plaintiff was at an increased risk of infection is not sufficient to allow a jury to speculate on the issue of causation.  State otherwise, Dr. Metzger's testimony did not satisfy the first prong of the two-part test articulated in Mitzelfelt.  Accordingly, granting the motion for judgment as a matter of law was not erroneous.

There is yet another reason why Defendant Brennan was entitled to judgment as a

matter of law.  The premise upon which Plaintiff's argument rests is that a relaxed standard of proof of causation in certain negligence cases applies in civil rights actions based upon the alleged deliberate indifference of a state actor to a substantial risk of harm to the plaintiff.  Plaintiff has cited no cases that support this premise.

In contrast to the position advanced by Plaintiff, courts have held that "[t]o prevail and recover damages on [a] section 1983 claim under . . . a deliberate indifference   . . . theory [the plaintiff] must prove that [the defendant's] actions were both the actual and the proximate cause of [the plaintiff's] injuries." White v. Roper, 901 F.2d 1501, 1505 (9th Cir. 1990).  That is, a § 1983 plaintiff may only recover damages for injuries that would not have occurred "but for" the alleged wrongful conduct.  Id.  Thus, where, as here, "the deliberate indifference takes the form of an omission – a failure to act – the proximate cause inquiry requires at a minimum that the plaintiff's injury would not have occurred but for the defendant's failure to take the curative action." Hvorcik v. Sheahan, 847 F. Supp. 1414, 1425 n.28 (N.D. Ill. 1994).  Absent competent proof that the alleged violation of a constitutional right proximately caused the injury for which damages are claimed, no recovery is possible.  See Horn by Parks v. Madison County Fiscal Court, 22 F.3d 653, 659 (6th Cir. 1994).

Although independent research has not identified any controlling authority from the Court of Appeals for the Third Circuit, it is noteworthy that in the analogous state-created

danger context, in which the "deliberate indifference" standard applies, our Court of Appeals has held that "[t]here must be a direct causal relationship between the affirmative act of the state and plaintiff's harm." Kaucher v. County of Bucks, 455 F.3d 418, 432 (3d Cir. 2006). This "direct causal relationship" is established only where the defendant's conduct was the "but for cause" of the harm sustained by the plaintiff. Id.

Requiring "but for" causation where liability rests upon a showing of deliberate indifference to a risk of substantial harm makes sense. A state actor does not violate a person's civil rights by negligent conduct. See Davidson v. Cannon, 474 U.S. 344, 347-48 (1986); Freedman v. City of Allentown, 853 F.2d 1111, 1117 (3d Cir. 1988). Adoption of an "increased risk of harm" causation standard, however, would essentially subject state actors to liability where their conduct only increased the risk of harm without any showing that the harm sustained was actually caused by the alleged deliberate indifference. The separation between violations of constitutional rights and liability for a failure to exercise due care is maintained by requiring a plaintiff to show that "but for" the alleged deliberate indifference, the harm sustained would not have occurred.

Competent proof of causation in a § 1983 action "that arises from alleged deliberate indifference involving a sophisticated medical condition requires that expert testimony be offered to prove causation." Wooler v. Hickman County, Kentucky, Civil Action No. 5:05CV-247-R, 2008 WL 5412826, at *8 (W.D. Ky. Dec. 30, 2008). In this case, Dr. Metzger did not

opine that "but for" the failure to receive antibiotics for a 48-hour period, the infection first

detected more than two weeks after Mr. Miszler's release from prison would not have

occurred.  Far from offering such testimony, Dr. Metzger testified only to the "possibility" of a

causal relationship, and, at best, an increased risk of infection.  He could not, however,

separate the increased risk of infection attributable to the suspension of antibiotic treatment

while Mr. Miszler was hospitalized from the increased risk of infection due to the alleged

suspension of antibiotic treatment while he was incarcerated.  Nor did he offer any basis for

the conclusion that an infection that first made itself manifest more than two weeks after

release from imprisonment was attributable to the absence of antibiotics during that brief

period of incarceration at SCCF.  A finding of causation here would be entirely conjectural.

Accordingly, there is no basis for granting a new trial.[4]

III.  CONCLUSION

        The evidence in this case was not sufficient to enable a jury to determine that

Warden Brennan's alleged deliberate indifference to Mr. Miszler's serious medical need was

a proximate cause of the infection that first manifested itself more than two weeks after Mr.

---

[4] Although not raised by Defendant, it does not appear that Dr. Metzger articulated "good grounds" for his causation opinion.  In this regard, he did not offer any testimony to suggest that he had any expertise in the infectious disease process.  While he certainly was qualified to testify as to the post-operative standard of care of an orthopedic surgeon, it would seem that the precise use of antibiotics in post operative wound care and the process by which infectious diseases occur are outside his expertise.

Miszler's release from custody.  Civil rights liability may not be based upon conjecture or

speculation.  Furthermore, Dr. Metzger's testimony did not establish a proper foundation for

a causation finding under Pennsylvania law.  Under these circumstances, the entry of

judgment as a matter of law was fully warranted, and Plaintiff's motion for a new trial will be

denied.  An appropriate Order follows.

s/ Thomas I. Vanaskie

Thomas I. Vanaskie
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


BERNARD VICTOR MISZLER,            :
                                   :
            Plaintiff              :
                                   :
      v.                           :   3:04-CV-1756
                                   :   JUDGE VANASKIE
JEFFREY SHOEMAKER, ET AL.          :
                                   :
            Defendants             :


ORDER

_____NOW, THIS 20th DAY OF MARCH, 2009, for the reasons set forth in the foregoing

Memorandum, IT IS HEREBY ORDERED THAT:

1.  Plaintiff's Motion for a New Trial (Dkt. Entry 50) is DENIED.

2.  The Clerk of Court is directed to mark this matter CLOSED.

                              s/ Thomas I. Vanaskie
                              Thomas I. Vanaskie
                              United States District Judge